## Keller v. Flinchbaugh

*Jack H. Barton*, for plaintiffs.

*Morton H. Kagen* and *William W. Hafer*, for defendants.

SHADLE, J., April 29, 1966.—On December 13, 1961, the minor plaintiff was injured in an automobile accident involving vehicles owned and operated by the defendants. On December 12, 1963, at 6:44 p.m., counsel for plaintiffs appeared at the prothonotary's office in the court house. He then filed with the prothonotary a praecipe for a summons which thereupon was entered and docketed. The following day, December 13, 1963, a writ of summons was issued to the sheriff and was thereafter duly served. Plaintiffs thereafter filed a complaint, which likewise was served upon defendants.

Following the filing of answers containing new matter and replies thereto, defendants have filed motions for judgment on the pleadings. The grounds alleged are that the records show on their face that the praecipe was filed after the close of business hours of the prothonotary, that such act, therefore, was a nullity, and since no suit was legally begun until the complaint was served, the action is barred by the statute of limitations.

The applicable statute of limitations is two years: Act of June 24, 1895, P. L. 236, sec. 2, 12 PS §34. Under section 38 of the Statutory Construction Act of May 28, 1937, P. L. 1019, as amended, 46 PS §538, by excluding the first and including the last day of the period, suit actually could have been started on Decem-

ber 13, 1963. However, this fact does not change the results. Unless suit was started on the evening of December 12, it is barred by the statute of limitations, since the service of the complaint which would have begun the action did not occur until well after the statute had run. Despite the fact that suit could have been started on December 13, the fact remains that no step was taken on that date to do so.

Defendants lay great stress on the fact that in the official printed court calendar for 1963, the following notice appears over the name of the prothonotary:

"Notice is hereby given that the Prothonotary's Office will be open for transaction of business pertaining to said Office from 8:30 A. M. until 4 o'clock P. M., without intermission, except Saturdays when said Office will close at 12 o'clock noon. The said Office will not be opened before the hour first above named nor after the hour last above named, for any person, or persons, nor for the transaction of public business whatsoever".

Defendants contend that because of this notice and the practice of the prothonotary to observe it, the filing of the praecipe after 4:00 p.m. not only was a nullity, but that to permit the prothonotary to make exceptions to the closing hour would open the door to favoritism and abuse.

There is no statute fixing the hours of business of the prothonotary in fourth class counties, of which York County is one. Four cases have dealt with the question of filing papers with the prothonotary after business hours.

The first is Clark v. Wallace, 3 P. & W. 441 (1832). There, a party attempted to file a paper with the prothonotary at 8:00 p.m., and the official refused to accept it. The court held this to be error because it was there shown that the prothonotary had previously transacted business after hours, and had informed the applicant

that he could file the paper that evening. Neither of these facts is present here. The court there used the following language:

"Where fair and reasonable efforts shall appear to have been made by the party desiring to appeal, and he is prevented in consequence either of the negligence, or of the mistaken notions of the officer, as to his own official right, or the rights of the appellant, the court will, if application be made at the earliest opportunity, direct the appeal to be entered; this they are bound to do, because the trial by jury must be favored, and if possible, preserved to all suitors. . . ."

In Polhemus's Appeal, 32 Pa. 328 (1858), a party delivered judgment notes for the entry of judgment to the prothonotary at his home at 11:00 p.m. The prothonotary accepted the notes, forthwith marked them filed, and entered them on his docket the next day. The court stated as follows:

"We do not mean to countenance the practice of calling on public officers at 11 o'clock at night to perform official duties. Although neither law nor usage have assigned any very definite office hours for prothonotaries in rural counties, yet we think that the call here was greatly out of season, and had the prothonotary insisted on exemption from office duties at that hour, the courts would have sustained him. *But we cannot say he was incapable of performing a valid official act, even at his house and so late at night.* He chose to do it, and having done it, a subsequent creditor has no right to complain of it. . . ." (Italics added).

Kauffman's Appeal, 70 Pa. 261 (1871), involved the filing of papers with the prothonotary at his residence on a Sunday evening, followed by their entry and docketing at his office the next day. The court upheld the validity of the filing in the following language:

"However improper the act, the delivery of the declarations, confessions of judgments and praecipes for

executions to the prothonotary at his residence on Sunday evening, did not affect or impair the validity of the judgments entered, and the executions issued in pursuance thereof the next morning. The prothonotary was not bound to receive the papers at his dwelling house, and his acceptance of them there cannot be regarded as an official act. He did not receive them in his official capacity, but merely as the agent of the appellee. . . ."

It will be noted that Kauffman turned on the theory of agency and the filing and entry of the papers the following day, factors not present here.

Burd v. Bennett Transportation Co., 21 Erie 59 (1938), also involved the late filing of papers. The court summarily disposed of the objection thereto by stating: "The fact that the praecipe was filed a half hour after the usual time for closing the Prothonotary's Office is unimportant. The praecipe was received and filed by an official who had remained in the office".

All of these authorities seemed to indicate that while the filing of papers with the prothonotary after business hours is irregular and improper, if the official in fact accepts the papers, the filing is valid and effective. In fact, under the circumstances in Clark, supra, refusal to accept the papers was held to be error, although the other cases indicate that the prothonotary is not bound to act after his office has closed.

The instant case differs from all the others in the existence of the published statement of the prothonotary as to his policy on business hours. However, since such statement was neither a statute nor a rule of the court, we fail to see that deviation from a printed statement of policy is any different from a waiver of an unwritten practice to close the office at a specific hour. It is true that in either circumstance the willingness to deviate from the standard practice could lead to favoritism and abuse. It is for this reason that such a devia-

tion is condemned as a general practice, and we are compelled to join in the disapproval thereof.

There may be cases in which purchasers, creditors and others may rely on the written or unwritten practice of the prothonotary to close the office to business at a stated hour, and in which a waiver of such practice by a late filing may result in prejudice to them. Any such factual situation may require a holding that such an unexpected deviation renders the after-hours transaction invalid. However, there is not the least indication here that defendants in any way relied upon the practice of the prothonotary to close his office to business at the stated hour, nor that they were in any way prejudiced by the late filing which occurred here.

In recognition of the policy of the law favoring the free right to full litigation of disputed claims, including the right to a trial by jury, we hold, therefore, that suit was properly instituted on the instant claim on December 12, 1963, within the period of the statute of limitations.

ORDER

And now, to wit, April 29, 1966, defendants' motions for judgment on the pleadings are overruled and refused, and exceptions are noted on their behalf.