## Dexter et al. *v.* Pennsylvania Power Company, Appellant.

Argued April 15, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Leo H. McKay*, with him *C. E. Brockway*, of *Brockway, Whitla & McKay* and *Cobau & Berry*, for appellant.

*M. L. McBride*, for appellees.

OPINION BY BALDRIGE, J., July 15, 1937:

The plaintiffs brought an action of ejectment against the Pennsylvania Power Company, the appellant, to compel it to remove a power line from their farm.

The following controlling facts are not in dispute:

On January 6, 1917, Ella B. MacBride, mother of plaintiffs, sold the farm in question, located in Mercer County, to William H. Glessner, who executed and de-

livered to the vendor a purchase money mortgage, in the sum of $6,100. On April 11, 1928, Glessner and his wife, in consideration of $1, executed a deed to the appellant, giving it the right to construct and maintain an electric power line across this property. Shortly, thereafter, the appellant erected poles, strung wires, and furnished electric current to the buildings on this farm and other properties in that neighborhood. On February 1, 1924, the mortgage was assigned to the plaintiffs, who foreclosed it in 1933 and became the purchasers of the property at sheriff's sale for $2,001.

There is no evidence in the record that the plaintiffs, during the time they held the mortgage, had actual notice of the construction of the power line.

A verdict was obtained by the plaintiffs for possession of the premises in dispute, together with damages for occupation in the sum of $100. An appeal was taken to the refusal of the court to grant a judgment for defendant n. o. v.

Was this easement valid against the mortgagees, and purchasers, at the sheriff's sale?

It is well established that the title of a purchaser at a sheriff's sale relates back to the date of the mortgage and defeats all intervening estates and interests acquired subsequent to the mortgage: *Reisinger v. Garrett Smokeless Coal Co.*, 262 Pa. 530, 106 A. 78. It naturally follows that a sheriff's sale on a prior mortgage destroys a subsequently granted easement. It was so held in *King v. McCully*, 38 Pa. 76, 77, where it is stated that title to the right of way "was subject to the mortgage, and as the sheriff's sale vested title in the purchaser by relation to the date of the mortgage it swept away all title under those deeds as well to the right of way as to the land." This seems to be the only Pennsylvania authority on that question, but it is supported by decisions in other jurisdictions: See *Mt. Holyoke Realty Corp.*

*v. Holyoke Realty Corp. et al.* (Mass.), 187 N. E. 227; *Naccash v. Hildansid Realty Corp.*, 257 N. Y. S. 748; *Arterburn v. Beard et al.* (Neb.), 126 N. W. 379; *Stanislaus Water Co. v. Bachman* (Cal.), 93 P. 858; *Briggs v. Chicago, K. & W. R. Co.* (Kans.), 43 P. 1131; *Leavenworth Lodge v. Byers* (Kans.), 38 P. 261; 7 Mich. L. R. 595. It is stated in 19 C. J. §90, p. 905: "While an easement in real property cannot be granted by the owner thereof so as to affect the rights of a prior mortgagee, the party claiming the easement has the same rights as any other subsequent encumbrancer."

The appellant could have obtained title, if it had so demanded, by condemnation proceedings under the Act of April 14, 1915, P. L. 122, §§1, 3 (26 PS §§121, 123), which provides that the petition for the appointment of viewers shall specify the liens upon the land sought to be appropriated; and that the payment of damages may be paid first to the lien creditors and the balance to the owners. See, also, *Harris' Appeal, Jacoby's Appeal*, 323 Pa. 124, 186 A. 92. It is apparent that it was the purpose of the Legislature to protect lien creditors when land is taken under power of eminent domain. An owner of property, with liens thereon, should not be permitted to defeat the legislative intent by making a voluntary conveyance, and imperil the security of lien holders.

The appellant asserts that, notwithstanding it did not appropriate and condemn the right of way, it, as a public service company, possessed and used that power when it built the power line with the consent of the owner of the fee; that such was, in effect, an appropriation, for public use, of the easement, and whatever damages were sustained were applicable to the mortgage, but that ejectment did not lie. Ejectment against a public service company, under certain circumstances, is available. For instance, if a company appropriates

land without compensation to the owner, possession of the property may be recovered.

In support of the foregoing proposition, the appellant relies on *Nittany Val. R. R. Co. v. Empire S. & I. Co.,* 218 Pa. 224, 67 A. 349 (1907), wherein the complicated facts were not at all analogous to the case at bar. The plaintiff, in 1887, built a railroad across land of defendant's predecessors in title, under an agreement with the owner who had mortgaged the property the year previous. The mortgage was foreclosed in 1891, and the mortgagee became the purchaser. Later, the title passed to others and new mortgages were given. A bill in equity was filed in 1907 to restrain the owners of the land from interfering with the operation of the railroad. One of the many facts which distinguishes that case from the one at bar is that the mortgagee there recognized the validity of the title of the railroad company to the tracks and acquiesced in their use. Nor are the facts in the case at bar similar to those in *Leininger v. Goodman,* 277 Pa. 75, 120 A. 772, where the doctrine of equitable estoppel was successfully invoked.

In cases where there has been no entry on the land, no appropriation of any part of it, but the property has been injured—for example, by a change of grade —the right of action for such injury is in the owner of the freehold and a mortgagee out of possession has no remedy: *Shields v. Pgh.,* 252 Pa. 74, 97 A. 124. In *Knoll, Admr. v. N. Y. Etc. Ry. Co.,* 121 Pa. 467, 15 A. 571, a railroad track was laid along the center of the street on which the mortgaged property fronted. It was held that the right of action for the injury, as no property had been taken, was in the owner and not in the mortgagee out of possession. In the course of the opinion, the court however said (p. 476) : "Had the road been located over any portion of this lot, and had the damages been settled by the parties or adjusted

without notice to the plaintiff, it is probable that the lien of the mortgage would not be divested, and the mortgagee might in that case proceed upon his mortgage in the same manner as if a sale of part of the mortgaged premises had been made to a private person ......" See, also, *Phila. & Read. R. R. Co. v. Penna. S. V. R. R. Co.,* 151 Pa. 569, 25 A. 177. In *Tide Water Pipe Co. v. Bell,* 280 Pa. 104, 124 A. 351, a pipe-line right of way had been granted many years before a tax sale of the land over which the line was laid. It was held that a subsequent tax sale did not divest the right of way, as the tax sale only passed the estate and interest of the real owner and the right of way or easement was an interest the real owner did not have.

Our conclusion is that, notwithstanding this grant of the right of way was obtained for a public purpose, it was not binding on the prior mortgagee.

The appellant advances the further argument that when this property was sold at sheriff's sale, the right of way had been in existence five years and was an open, notorious, permanent, and continuous easement. We do not question that under a sale, judicial or private, a purchaser takes real property subject to such servitude. That rule is supported by *Grace M. E. Church v. Dobbins,* 153 Pa. 294, 25 A. 1120; *Nauman v. Treen Box Co.,* 280 Pa. 97, 124 A. 349. In those cases the mortgagee's prior rights were not involved; here they are. This was not a permanent and continuous user of a right of way for a long period of time after appellees purchased the farm; less than a year after title was acquired, they brought this suit.

In *Cannon v. Boyd,* 73 Pa. 179, a mortgagor of a plot of land subdivided it into three lots and built on two of them, leaving an alley on one for the benefit of the adjacent lot, which was an apparent and continuous easement. The sheriff sold all the interest of the mort-

gagor, including the rights and easement. No question arose whether the easement was valid against the mortgagee, as he held the mortgage on the entire property, and his security was in no way impaired by the grant of the easement. A very similar situation existed in *Richmond v. Bennett*, 205 Pa. 470, 55 A. 17. In *Overdeer's Admrx. v. Updegraff*, 69 Pa. 110, two lots were owned by the decedent, who had opened an alley between them. After his death, his administratrix, under an order of court in which no reference was made to an alley, sold the lot on which the alley was located, subject, however, to that easement. The right of way was reserved in the conditions of sale, signed by the purchaser, as well as in the deed. The court held the easement was not extinguished. It is apparent that the facts therein are different from those in the case at bar.

If this grant is valid against the appellees, a mortgagor could destroy the security of a mortgage to a large extent by encumbering the property with numerous servitudes. Approval of such a rule has not, to our knowledge, received the sanction of our courts. We will not lend our aid to a doctrine that might hereafter result in great hardship to mortgagees.

Judgment affirmed.