295 F.2d 24
 James RICH and Walter Precha, Libellants, and Nick Daratsakis, Intervening Libellant, Appellants,
v.
NAVIERA VACUBA S. A., and Republic of Cuba, Respondents, Appellees.
MAYAN LINES S. A., Libellant, Appellant,
v.
REPUBLIC OF CUBA and THE M/V BAHIA DE NIPE et al., Respondents, Appellees.
UNITED FRUIT SUGAR COMPANY, a Delaware Corporation, Libellant, Appellant,
v.
5,000 TONS OF SUGAR, in rem, now laden on board THE M/V BAHIA DE NIPE, now in Lynnhaven Roads, Virginia, and Augustin Albella, acting master, in personam, Respondents, Appellees.
Jorge NAVARRO, Omar Parets, Jaime Merchan, Enrique Cardonne, Matias Barraza, Ricardo Alvarez, Jeronimo Mayordomo, Ramon Tocoronte, Juan Mazola, Everardo Amarante, Iluminado Leyva, Libellants, Appellants,
v.
THE M/V BAHIA DE NIPE, Respondent, Appellee.
 No. 8448.
 United States Court of Appeals Fourth Circuit.
 Argued September 5, 1961.
 Decided September 7, 1961.
 
 Abraham E. Freedman, Philadelphia, Pa. (Sidney Kelsey, Norfolk, Va., on brief), for appellants, Rich and Precha.
 Edward L. Breeden, Jr., Norfolk, Va. (Robert R. MacMillan, Breeden, Howard & MacMillan, Norfolk, Va., and Cobb & Wright, New Orleans, La., on brief), for appellant, Mayan Lines, S. A.
 Braden Vandeventer, Jr., Norfolk, Va., and Robert C. Barnard, Washington, D. C. (Vandeventer, Black, Meredith & Martin, Norfolk, Va., Morton M. Winston, and Cleary, Gottlieb, Steen & Hamilton, Washington, D. C., on brief), for appellant, United Fruit Sugar Co.
 William H. Orrick, Jr., Asst. Atty. Gen. (Morton Hollander, John G. Laughlin and Edward A. Groobert, Attorneys, Department of Justice, Washington, D. C., on brief), for the United States of America.
 Before SOBELOFF, Chief Judge, and SOPER and BRYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 The vessel Bahia de Nipe sailed on August 8, 1961, from Cuba with a cargo of 5,000 bags of sugar destined for a Russian port. When on August 17 the ship was about 300 miles east of Bermuda the master and ten of his crewmen put the rest of the crew under restraint, turned the vessel towards Hampton Roads, Virginia, and notified the Coast Guard of their intention to seek asylum in the United States. As they crossed the three-mile limit and neared the entrance to the Chesapeake Bay the vessel was met by the Coast Guard and taken to anchorage off Lynnhaven, Virginia.
 
 
 2
 These proceedings were begun on August 18 by the filing of a libel against the vessel on behalf of two longshoremen who had earlier recovered judgments against the Republic of Cuba and Naviera Vacuba, S. A. The latter owned the vessel before she was taken over by the revolutionary government of Cuba. Shortly thereafter another libel was filed against the ship and cargo by Mayan Lines, S. A. which had previously recovered judgment by consent in a state court of Louisiana in the sum of $500,000 against the Republic of Cuba. A third libel was filed against the cargo only by the United Fruit Sugar Company which claimed that the sugar belonged to it, having been unlawfully confiscated in Cuba by the revolutionary government. Libels for wages were also filed by the defecting master and the ten crew members.
 
 
 3
 Upon the institution of these suits in the United States District Court for the Eastern District of Virginia at Norfolk, the Clerk, pursuant to law and the practice of the court, issued the customary in rem process and delivered the same to the United States Deputy Marshal to be served upon the ship. Service, however, was prevented by the Coast Guard, which purported to act "pursuant to orders" and in reliance upon the authority of 50 U.S. C.A. § 191. On being advised of this interference with the Marshal in the performance of his duties, the District Judge issued an order directed to the Captain of the Port and the Commander of the Coast Guard, requiring them to appear and to show cause why an order should not be entered permitting the Marshal to board the vessel to execute the writs.
 
 
 4
 A number of communications from and on behalf of the Secretary of State addressed to the Attorney General were presented to the court by the United States Attorney. While infelicitously expressed, we think these sufficiently set forth the requisites of a valid suggestion for the allowance of sovereign immunity.
 
 
 5
 Arguments extending over several days were heard by the District Court which then held that the Coast Guard and those who had directed it acted in excess of their authority in preventing the service of the court's process. We likewise do not condone the Coast Guard's refusal to permit the Marshal to serve the process and find no authority therefor in section 191.
 
 
 6
 We turn to a consideration of the other questions raised. The chief defense, indeed the only one argued by the Government, is that the Republic of Cuba is a sovereign power immune from the jurisdiction of the courts of the United States, and that when the Department of State accepted Cuba's claim of ownership, possession and public operation of the ship, and ownership of the cargo, and so certified to the court and suggested that sovereign immunity be accorded, the court was bound to respect the determination and suggestion of the State Department.
 
 
 7
 The libellants argue that before sovereign immunity may be granted they should be heard by the court on whether the foreign government is in fact the owner and possessor of the property in question and, as to the ship, whether she was operated by that government not commercially but in a public capacity.
 
 
 8
 Mayan Lines, S. A. showed in addition that in the state court action wherein its $500,000 judgment was obtained against the Republic of Cuba, the defendant specifically waived its sovereign immunity in respect both to the adjudication of liability and the enforcement of the judgment by execution. It argued that it is both illegal and unconscionable for Cuba to attempt in the present proceedings to repudiate its unlimited waiver, solemnly made in the course of the Louisiana litigation.
 
 
 9
 For the libellant, United Fruit Sugar Company, evidence was adduced to prove that the very bags of sugar constituting the cargo were its property, expropriated from the company's plants in Cuba. Accordingly, this libellant asserted that release of the cargo under the doctrine of sovereign immunity, upon the mere certificate of the State Department without opportunity for further inquiry, would deprive it of its property without due process of law in violation of the Fifth Amendment. Similar contentions under the Fifth Amendment were advanced by the other libellants.
 
 
 10
 Despite these contentions, we conclude that the certificate and grant of immunity issued by the Department of State should be accepted by the court without further inquiry. Ex parte Republic of Peru, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014. See also Republic of Mexico v. Hoffman, 324 U.S. 30, 65 S.Ct. 530, 89 L.Ed. 729; Compania Espanola De Navegacion Maritima, S.A. v. Navemar, 303 U.S. 68, 58 S.Ct. 432, 82 L.Ed. 667. We think that the doctrine of the separation of powers under our Constitution requires us to assume that all pertinent considerations have been taken into account by the Secretary of State in reaching his conclusion.
 
 
 11
 The fact that the Mayan Lines' judgment was rendered in the Louisiana court after a specific waiver of immunity by the Cuban Government, both with respect to liability and enforcement of the judgment, does not significantly distinguish its position from that of the other libellants, in view of the controlling effect that must be given the State Department's action. We do not mean to suggest that the contention raised by this libellant as to the effect to be given the waiver would not be a suitable subject of inquiry in the absence of State Department action. In that case the question would be a proper one for the court to consider. The certification and suggestion of immunity, however, which has been made by the State Department in this matter affecting our foreign relations, withdraws it from the sphere of litigation. Especially is this so when the presence of the ship within the territorial jurisdiction of the court is made possible only by the barratry of the shipmaster. Refusal of the State Department in these circumstances to enforce Cuba's earlier waiver over its present assertion of immunity is within the Department's authority, and constitutes no violation of the libellant's rights under the Fifth Amendment.
 
 
 12
 The legal questions at stake are substantial, and we will withhold our mandate for a period of five days in order that the libellants may, if they see fit, apply to the Supreme Court of the United States, or a Justice thereof, for a stay pending review.
 
 The order of the District Court is
 
 13
 Affirmed.